UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10782-RGS

ELROY COOPER

v.

MICHAEL J. ASTRUE, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE OR REMAND
and APPELLEE'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER

March 29, 2011

STEARNS, D.J.

Appellant Elroy Cooper seeks review of a final decision of the Commissioner of

the Social Security Administration (SSA) that he is not disabled as defined by the

implementing regulations of the Social Security Act.  *See* 20 C.F.R. § 404.1520(g).

The issue on appeal is whether substantial evidence supports the Commissioner's

decision.  Cooper alleges that the Commissioner gave insufficient weight to his treating

physicians' opinions, and more specifically, that he failed to recontact them for

clarification of their reasons for finding him disabled.  The appeal to this court was

taken pursuant to 42 U.S.C. § 405(g), after the Decision Review Board upheld by

default the Administrative Law Judge's (ALJ) determination that Cooper is not

disabled.[1]  The Commissioner cross-moves for an order affirming the ALJ's decision.

A hearing on Cooper's appeal was held on March 22, 2011.

## PROCEEDINGS BELOW

Cooper applied for disability insurance benefits (DIB) and Supplemental Security

Income (SSI) benefits on June 28, 2008.  The application was denied on December 5,

2008, and again on May 27, 2009, after Cooper filed a petition for reconsideration.

Cooper then requested a hearing before an ALJ.  On October 19, 2009, ALJ Rebekah

Ross heard testimony from Cooper and from Jeff Goldfarb, a vocational expert (VE).

ALJ  Ross issued her decision, unfavorable to Cooper, on November 5, 2009.

The ALJ found that Cooper has the residual functional capacity (RFC) to

perform a full range of work at all exertional levels with the following nonexertional

limitations: (1) work limited to simple repetitive tasks; (2) no travel; (3) only occasional

work place changes; and (4) only occasional interaction with coworkers and no

interaction with the general public.  For the reasons to be stated, the decision of the

ALJ will be affirmed.

## FACTUAL BACKGROUND

---

[1] The Decision Review Board selected Cooper's decision for review, but failed
to complete its review within the allotted 90 days, making the ALJ's decision the final
decision of the Commissioner.

The following is taken from the medical records and Cooper's testimony before the ALJ. Cooper was born on November 5, 1949. According to a Work History Report that Cooper completed on September 8, 2008, his jobs since January of 2004 have included those of carpenter, newspaper distributor, and food services worker. He has not worked at gainful employment since February of 2008. (The claimed date of onset of disability is January 31, 2008).

Cooper, who developed a heroin dependency in 1970, has a lengthy record of incarceration interspersed with bouts of occasional homelessness.[2] Between periods of incarceration, Cooper was only sporadically employed. He worked at the Star Market grocery as a shelf stocker for over a year. He worked for two years at home renovation tasks, including carpentry, plumbing, electrical work, masonry, and landscaping. He held temporary jobs as a laborer, including a stint as a cranberry bog worker, for approximately a year and a half. He also distributed newspapers for over a year in Harvard Square for Boston Metro. Cooper states that he recently attempted

---

[2] Cooper has struggled with what he terms a "life of crime." His first arrest was based on a marijuana possession charge, for which he served six months in jail. His drug use progressed to heroin. He was sentenced to five years in the Walpole State Prison (now Cedar Junction) for armed robbery and burglary in 1973. After being released in 1978 or 1979, he was sentenced to prison in 1983 after a burglary conviction. Following his release in 1989, he was committed again in 1992 for violating his parole. In 2001, he was sentenced to jail for three months for possession of a hypodermic needle and assault and battery.

to find new employment, but could not get a job because of his criminal record.

Cooper suffers from depression, but does not report any physical condition that impairs his ability to work.[3] Cooper describes his mental state as "depression, hypertension – I have severe depression." He reports having no energy or desire to engage in any activity, and complains of poor memory and lack of concentration. At the time of the hearing, Cooper had begun taking Celexa to treat his depression. Celexa was initially prescribed by Dr. Pillard on August 26, 2009, who increased the dosage on October 7, 2009, two weeks prior to the hearing. Prior to being prescribed Celexa, Cooper did not take any other medication for his depression.

On February 26, 2008, Cooper saw Dr. Sheila Chapman, his primary care physician, and complained of increased hours at his job. He also reported a recent drug relapse and a round of treatment for his heroin dependency. Dr. Chapman's office records indicate Cooper's psychological symptoms as "depressed, struggling as at a wet shelter." The physical examination found Cooper alert and oriented, with appropriate affect and mood, normal personal interaction, and good eye contact. Dr. Chapman had prescribed Cooper Atenolol for high blood pressure. He was also prescribed suboxone to treat his opiate dependency. The record of a May of 2008 visit

---

[3] Cooper claims that he suffers complications from an old gunshot wound, which shattered his pelvic bone. His leg occasionally gives way on him as a result, although he does not regard the condition as acute or disabling.

describes Cooper as alert and oriented, with normal interaction, and good eye contact. He also denied symptoms of depression, memory loss, or anxiety.

In March of 2008, Cooper underwent further counseling for substance abuse. The treatment notes indicate that Cooper was supportive of other group members, and did well with his recovery. In January of 2009, Dr. Gardner began treating Cooper, and diagnosed him as bi-polar, with an opiate dependency in remission. Dr. Gardner's records describe Cooper as "very intelligent," "very pleasant," but exhibiting anger and depression triggers. Dr. Gardner thought that overall Cooper was doing "very well." Dr. Gardner was of the opinion that Cooper's major depression would interfere with his attempts to work. As a result, he believed Cooper to be totally disabled, although he did not prescribe any course of medication to treat Cooper's symptoms. In his RFC assessment, Dr. Gardner found Cooper moderately or markedly limited in every category.

In August of 2009, Cooper began treatment with Dr. Pillard who determined that he suffered from major depressive disorder with anxiety. He described Cooper as "an intelligent and well-motivated man who . . . regularly attends Mr. Adams' [drug counseling] group." In an RFC assessment, Dr. Pillard determined that Cooper was markedly or moderately limited in every category except the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Dr.

Pillard believed that Cooper's depression would cause him to miss three days of work each month and that he was therefore totally disabled.

On October 15, 2008, Dr. David Cahan, a consultant physician for Disability Determination Services, examined Cooper. According to Dr. Cahan, although Cooper stated that he "has developed severe depression . . .[, o]n physical examination, he appears to be somewhat depressed." Dr. Cahan opined that Cooper can "take care of his activities of daily living without significant limitation." On October 17, 2008, Dr. Scott Haas, a second consultant psychiatrist for Disability Determination Services, examined Cooper and reported him "highly motivated and rather pleasant. He has good interpersonal skills." Cooper denied any "vegetative symptoms of depression, such as insomnia, appetite loss, or weight loss," although he stated that he had difficulties with his memory. Dr. Haas commented that Cooper performed adequately on rote memory examinations, but that he had difficulties "in relationship to use of language, abstract reasoning and memory."

On December 4, 2008, Dr. Therese Harris, a state-contracted psychologist, reviewed Cooper's psychiatric records. She determined that Cooper's impairment(s) were not severe, although he suffered from affective disorders and substance addiction. She determined that the limitation on Cooper's daily living, social functioning, concentration, persistence, and pace were mild. Moreover, there were no reported

episodes of decompensation of any extended duration. Dr. Harris concluded that Cooper's ability to concentrate and manage his personal care was adequate and that he had no significant memory impairment. On May 22, 2009, Dr. Jane Metcalf, a second state-contracted psychologist, also reviewed Cooper's medical records and concluded that he suffered only a substance addiction disorder causing a mild impairment.

Cooper has completed one year of college. At some point, he pursued but did not obtain a certification in computer program skills. He lives alone. He walks to a nearby computer center each day to check his email. He states that he sometimes speaks to the computer instructor, but does not interact with other users of the center. His daily routine includes sitting, drinking coffee, watching news, visiting the computer center, and little else. Cooper relates difficulties being around other people, and at times even taking back streets "to avoid dealing with the crowds." He reports difficulty sleeping, often not getting more than four hours a night.

Cooper's last paid job was as a utility worker and food preparer in a cafeteria at a medical firm in Mansfield, Massachusetts. He quit his job in February of 2008, because of the expense of the commute and his frequent arguments with his manager. At one point, he had a physical fight with one of his co-workers and was sent home as punishment.

The ALJ also heard testimony from Jeff Goldfarb, a VE, who described

Cooper's job as a "shelf stocker" as equivalent to that of a stock clerk whose job is heavy and semiskilled. A cafeteria worker's job is light and semiskilled, while a construction worker's job is heavy and semiskilled. In answering a hypothetical based on Cooper's age and the assumption that he suffered no medical impairments other than depression and hypertension, and had no exertional limits, but could not do jobs that required sustained interaction with the general public, the VE determined that this hypothesized individual could perform Cooper's past jobs of construction worker and cafeteria worker. If limited to light work and only sporadic interaction with the general public, the person could perform only cafeteria work or jobs like those of a small parts assembler or machine feeder.

Cooper's attorney posed a hypothetical assuming the following limitations: difficulties in completing work on schedule, attending work on time, working with others without distraction, and accepting instructions from authority, while needing periodic rest without interruptions and missing three days of work each month. VE Goldfarb testified that there were no existing jobs in the national economy that this hypothetical person could perform.

## THE ALJ'S DECISION

The ALJ made the following verbatim findings of fact and conclusions of law.

    1.    The claimant meets the insured status requirements of the Social

Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since January 31, 2008, the amended alleged onset date.

3. The claimant has the following severe impairment: major depressive disorder with anxiety, also described as bipolar disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving simple repetitive tasks, no travel, only occasional work place changes, and only occasional interaction with coworkers but no interaction with the general public.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on November 5, 1949 and was 58 years old, which is defined as an individual of advanced age, on the amended alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the
        Social Security Act, from January 31, 2008 through the date of this
        decision.

## DISCUSSION

The decision of the Commissioner is conclusive so long as it is supported by

substantial evidence and so long as the Commissioner has applied the correct legal

standard. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*,

76 F.3d 15, 16 (1st Cir. 1996) (per curiam). "Substantial evidence . . . means evidence

reasonably sufficient to support a conclusion.   Sufficiency, of course, does not

disappear merely by reason of contradictory evidence. . . . [The] question [is] not which

side [the court] believe[s] is right, but whether [the Commissioner] had substantial

evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins.

Co.*, 144 F.3d 181, 184 (1st Cir. 1998) (internal citations omitted). The Commissioner's

findings, however, "are not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35

(1st Cir. 1999) (per curiam).

On appeal, Cooper contends that the ALJ's decision is not supported by

substantial evidence because: (1) she gave little or no weight to the opinions of

Cooper's treating physicians without adequate explanation; and (2) she failed to contact

the treating physicians to clarify the basis of their opinions before disregarding them as ambiguous or unsupported.

Disability determinations follow a "five-step sequential evaluation process" mandated by 20 C.F.R. § 404.1520. The analysis requires that the ALJ first determine whether or not a claimant was gainfully employed prior to the onset of the disabling condition. At the second step, the ALJ must determine whether a claimant suffers from a severe impairment limiting his ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that his disability is sufficiently serious to preclude a return to his former occupation(s). If he meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform. *Gonzalez Perez v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that he can no longer perform his prior vocation before the government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ initially found that Cooper had not worked since January 31, 2008, and that he suffered from a severe impairment – major depressive disorder with anxiety, or

bipolar disorder. She determined at Step 3, however, that the impairment did not constitute an Appendix 1-listed impairment. Therefore, she proceeded to Steps 4 and 5.

Steps 4 and 5 necessarily require an assessment of a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(5). To evaluate the RFC, the ALJ must follow a two-step process to: (1) determine whether the claimant has an underlying physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and (2) if such an impairment exists, the extent to which it limits his ability to perform basic work activities. This latter determination requires an evaluation of the intensity, persistence, and limiting effects of the claimant's pain or other symptoms. *See id.* §§ 404.1545(a)(2)-(3).

The ALJ first determined that the impairment suffered by Cooper could reasonably be expected to produce some of his claimed symptoms, but that his complaints about their pervasiveness and debilitating nature were inconsistent with the various RFCs and the objective medical evidence. The ALJ consequently determined that Cooper is able to perform a full range of work at all exertional levels, but with limitations. The ALJ noted Cooper's low score on the Wechsler Memory Scale test, but also took into account the reports of his treating doctors that he was oriented, motivated, interacted well with them and with members of his drug counseling group,

12

and that he had adequate concentration. To accommodate Cooper's mental condition, including his depressed mood and memory difficulties, the ALJ found that his ability to work was limited to jobs involving simple repetitive tasks, no travel, only occasional work place changes, only sporadic interaction with coworkers, and no interaction with the general public. Relying on the VE's testimony, she found that there were significant numbers of jobs in the national economy accommodating these limitations, which Cooper could perform.

## ISSUES ON APPEAL

### The ALJ's Treatment of the Treating Physicians

Cooper first complains that the ALJ did not give due deference to the opinions of Dr. Gardner and Dr. Pillard. According to Cooper, ALJ Ross improperly chose to give greater weight to the opinions of the non-examining reviewing physicians and psychologists, and in doing so, committed error.

An ALJ is directed to ordinarily give "more weight" to treating physicians' opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). However, the First Circuit "does not require ALJs to give

greater weight to the opinions of treating physicians." *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (per curiam), citing *Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 13 (1st Cir. 1982); *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 4 (1st Cir. 1987). An ALJ is entitled "to piece together the relevant medical facts from the findings and opinions of multiple physicians." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). If the choice is supported by substantial evidence, the ALJ may prefer the opinion of a reviewing physician to that of a claimant's treating physician. *See Arroyo*, 932 F.2d at 89. And if the treating physician's opinion is inconsistent with other substantial evidence in the record, the conflict is for the ALJ – and not the court – to resolve. *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

There is no doubt that the ALJ discounted Dr. Gardner's and Dr. Pillard's opinions that Cooper is totally disabled. Although she gave some weight to Dr. Gardner's opinion, she determined it to be inconsistent with the overall objective medical evidence and his own treatment records. These, she noted, were sparse and contained little by way of objective findings corroborating his opinion that Cooper was totally precluded from gainful employment. The ALJ also noted that the work place challenges that Dr. Pillard believed Cooper would encounter are inconsistent with his

own findings that Cooper interacted well with the counseling group, was otherwise motivated, and had good interpersonal skills and adequate concentration.

Finally, the ALJ concluded that Cooper's own daily activities are inconsistent with his subjective allegations of disabling depression or other mental symptoms. Cooper takes good personal care of himself, does housework, and attends regular group counseling sessions. He also attends computer classes, and has from time to time looked for a new job, which, as the ALJ noted, indicates that Cooper himself believes that he can perform some types of work. On this record, I cannot say that the ALJ's decision to discount the opinions of Dr. Gardner and Dr. Pillard and rely instead on the opinions of the non-treating doctors and psychologists was not supported by substantial evidence.

**The Failure to Recontact the Treating Sources**

Cooper also alleges that the ALJ committed error in finding Dr. Gardner's and Dr. Pillard's opinions as "insufficient, unsupported or ambiguous" without first seeking clarification from them as to why they had formed the opinions that they did. Appellant's Br. at 12.

Title 20 of the Code of Federal Regulations, § 404.1512(e), states that when the evidence received from a treating physician or psychologist or other medical source is inadequate to determine whether a claimant is disabled, the SSA is obligated to

"recontact [the claimant's] treating physician or psychologist or other medical source to determine whether the additional information [needed] is readily available[, and] . . . seek additional evidence or clarification from [a] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-5p states that "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved for the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."

The short answer is that the argument is a semantic one. Cooper points to the ALJ's notation that the records of Dr. Gardner "are somewhat limited and do not contain sufficient objective findings to support the severity of this opinion," Tr. at 19, as a "finding" on her part that the evidence was inadequate to permit a fair evaluation of disability. This is simply not what the ALJ meant (or said). As the Commissioner fairly responds, the ALJ "did not find that the evidence was inadequate to evaluate disability," but "reasonably found that these opinions were *inconsistent* with the other objective medical evidence of record." Appellee's Br. at 15. Because the ALJ had

substantial evidence before her contradicting the treating physicians' opinions and enabling her to conclude without further inquiry that Cooper was not disabled, she did not err by not recontacting the treating doctors and relying instead on the evidence of record and the evaluations of the non-treating physicians.[4]

ORDER

For the foregoing reasons, the Commissioner's Motion for an Order Affirming the ALJ's Decision is <u>ALLOWED</u>. Cooper's Motion for an Order Reversing or Remanding the Decision of the Commissioner is <u>DENIED</u>. The Clerk will close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[4] I note that the ALJ delayed her decision to permit Cooper to supplement the evidence with additional records of Dr. Pillard.